FILED

Jan 30 2020, 10:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Charles W. Lahey
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason L. Anderson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 30, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2003<br><br>Appeal from the LaPorte Superior<br>Court<br><br>The Honorable Michael S.<br>Bergerson, Judge<br><br>Trial Court Cause No.<br>46D01-0010-CF-124 |

**Najam, Judge.**

## Statement of the Case

Jason L. Anderson appeals the trial court's revocation of his probation.

Anderson raises three issues for our review, which we restate as follows:

1.     Whether Anderson invited any error in the delay in his sentencing on Count II when, in his plea agreement, he affirmatively agreed to a delay of up to nearly ten years for that sentencing.

2.     Whether the trial court erred when it relied on the whole of Anderson's plea agreement to reject his argument that he had been twice sentenced on Count I.

3.     Whether the State presented sufficient evidence to support the revocation of Anderson's probation.

We affirm.

## Facts and Procedural History

In September of 2000, the State charged Anderson with three counts of dealing in cocaine, two as Class A felonies and one as a Class B felony. In February of 2001, Anderson entered into a written plea agreement with the State regarding those three charges, which agreement the trial court later accepted. According to the agreement:

> [7(A)].     [Anderson] will ple[a]d guilty under Count I[] to the lesser included offense of Dealing in Cocaine as [a] Class B Felony[] and to Count II, Dealing in Cocaine, as charged as a Class A Felony, respectively;

> B.     As to Count I, the State will recommend and [Anderson] will not oppose[] a sentence of ten (10) years incarceration at the Indiana Department of Correction[], of which ten (10) years will be suspended and served as follows:

i.     The first five (5) years of the suspended sentence portion shall be served through the LaPorte County Community Corrections Work Release Program.

\*      \*      \*

ii.     The second five (5) years of the suspended portion shall be served . . . under the Court's Order of Probation . . . .

\*      \*      \*

D.     As to Count II . . . , [Anderson] specifically waives his right to be sentenced within thirty (30) days and the cause will be continued for sentencing . . . as set forth below:

i.     If, on March 17, 2011, [Anderson] has complied with all terms and conditions of Probation and Work Release, the State will move to dismiss;

ii.     However, if[,] at the time of the sentencing hearing, or anytime before, on motion of the State or Probation, the Court determines that [Anderson] has violated the conditions of Work Release or Probation, then the parties will proceed to argue sentencing alternatives as authorized by [law] on Count I [sic[1]], Dealing Cocaine, as a Class A felony.

---

[1] As discussed in more detail below, here the plea agreement is of course referring to Count II, not Count I.

> E. The State will dismiss Count III[, dealing in cocaine as a Class A felony].

Appellant's App. Vol. 2 at 17-18 (italics removed).

[4] In 2004, while Anderson was serving his probation pursuant to his plea agreement, the State filed a petition to revoke his probation. Thereafter, Anderson admitted to violating the terms of his probation. The trial court revoked Anderson's probation and ordered him to serve ten years in the Department of Correction on Count I, the Class B felony, and a concurrent term of twenty years on Count II, the Class A felony.

[5] In November of 2011, Anderson moved to modify his sentence. The court granted his motion and ordered him to serve six months in the LaPorte County Jail followed by work release for eighteen months. Thereafter, if compliant, Anderson would be permitted to serve "the remainder of [his] term" on probation. *Id.* at 24.

[6] In 2017, while Anderson was serving his term of probation pursuant to the court's 2011 order, the State filed a second petition to revoke Anderson's probation. According to the State's amended petition, Anderson violated the conditions of his probation when he committed new offenses of dealing in a narcotic drug, as a Level 2 felony; dealing in cocaine, as a Level 2 felony; and dealing in marijuana, as a Level 5 felony. The State also alleged that Anderson had committed new federal offenses of felony possession of firearms, for which Anderson had pleaded guilty in a federal district court.

[7]     Anderson moved to dismiss the State's second petition to revoke his probation. According to Anderson, his current term of probation was based on paragraph 7(D)(ii) of his plea agreement, that paragraph references "Count I," Anderson had already served his sentence on Count I, and, thus, the court was without jurisdiction to place him on probation pursuant to the plea agreement. After a fact-finding hearing, the trial court denied Anderson's motion to dismiss and found that he had violated the terms and conditions of his probation as alleged by the State. The court then ordered Anderson to serve ten years in the Department of Correction.

[8]     Anderson filed a motion to correct error and alleged, in addition, that the trial court had lost jurisdiction over him because the original sentencing order, which accepted the plea agreement, "created an unreasonable delay in sentencing and the sentence on Count II . . . was, consequently, without judicial authority and therefore void." *Id.* at 45 (underlining removed). Anderson also renewed his argument from his motion to dismiss. The court heard argument on Anderson's motion to correct error, after which it denied his motion. This appeal ensued.

## Discussion and Decision

### *Issue One: Purported Delay in Sentencing*

[9]     On appeal, Anderson first asserts that the trial court erred as a matter of law when it failed to sentence him on Count II within thirty days of accepting his plea agreement in 2001. But we will not consider this argument. "[I]nvited

error typically forecloses appellate review altogether." *Batchelor v. State*, 119 N.E.3d 550, 556 (Ind. 2019). "An appellant will not be permitted to take advantage of errors which he himself committed, or invited or induced the trial court to commit . . . ." *Id.* at 557 (quoting *Armstrong v. Presslor*, 225 Ind. 291, 295, 73 N.E.2d 751, 753 (1947)). "[T]o establish invited error, there must be some evidence that the error resulted from the appellant's affirmative actions as part of a deliberate, 'well-informed' trial strategy." *Id.* at 558.

[10] The trial court's delay in sentencing Anderson on Count II resulted from the plain terms of Anderson's own plea agreement. The agreement could not be more clear on precisely this point: "As to Count II . . . , [Anderson] specifically waives his right to be sentenced within thirty (30) days and the cause will be continued for sentencing" up to "March 17, 2011." Appellant's App. Vol. 2 at 18. Anderson's complaint on appeal that the trial court erred when it "created a delay in sentencing for more than ten years" as to Count II simply disregards the fact that the delay was the product of his own affirmative agreement. Appellant's Br. at 10. Any error in the delay was invited by Anderson and is not available for appellate review.

### Issue Two: Whether Anderson Was Twice Sentenced On Count I

[11] Anderson next relies on an obvious typographical error to assert that the court erred when it placed him on probation. Specifically, Anderson complains about the italicized language below from his plea agreement:

> D. As to Count II . . . , [Anderson] specifically waives his right to be sentenced within thirty (30) days and the cause will be continued for sentencing . . . as set forth below:
>
>> i. If, on March 17, 2011, [Anderson] has complied with all terms and conditions of Probation and Work Release, the State will move to dismiss;
>>
>> ii. However, if[,] at the time of the sentencing hearing, or anytime before, on motion of the State or Probation, the Court determines that [Anderson] has violated the conditions of Work Release or Probation, then the parties will proceed to argue sentencing alternatives *as authorized by [law] on Count I, Dealing Cocaine, as a Class A felony*.

Appellant's App. Vol. 2 at 18 (emphasis added). According to Anderson, the italicized reference to Count I above means that the trial court had no authority to either sentence him to probation on Count II, because that is not what is written, or on Count I, in that, by that time, Anderson had served his sentence on Count I. In effect, Anderson continues, his placement on probation sentences him twice on Count I.

[12] We interpret plea agreements *de novo*. *State v. Smith*, 71 N.E.3d 368, 370 (Ind. 2017). Our ultimate goal is to determine the intent of the parties at the time they made the agreement. *Id.* We consider the agreement as a whole in determining its meaning. *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 752 (Ind. 2018).

[13]   Anderson's argument on this issue is that "*Count I*, Dealing Cocaine, as a Class A felony" in paragraph 7(D)(ii) of his plea agreement speaks for itself. We agree that it does speak for itself—as an obvious typographical error. In the plea agreement, Anderson pleaded guilty to "Count I, . . . Dealing Cocaine as a Class B felony, and to Count II, Dealing in Cocaine, as charged as a Class A Felony . . . ." Appellant's App. Vol. 2 at 17 (italics removed). That is, the only Class A felony he pleaded guilty to was charged under Count II, as made clear by paragraph 7(A) of his plea agreement. The plea agreement then, in paragraph 7(B), disposes of his sentence "[a]s to Count I." *Id.* (italics removed).

[14]   Having disposed of that sentence, in paragraph 7(D) the agreement then proceeds to explain how the delayed sentencing "[a]s to Count II" will proceed. *Id.* at 18 (italics removed). In particular, that paragraph states that Anderson's "sentencing" for "Count II" will be "as set forth below," and subparagraphs (i) and (ii) then follow. *Id.* (italics removed). Those two subparagraphs operate to say, in effect, that, if Anderson were to successfully complete his suspended sentence on Count I, the State would move to dismiss Count II. "However," if Anderson did not successfully complete the suspended sentence on Count I, "the parties [would] proceed to argue sentencing alternatives as authorized by [law] on Count I [sic], Dealing Cocaine, as a Class A Felony." *Id.*

[15]   The last reference to "Count I" does not make any sense if read literally, as Anderson urges us to do. The reference is clearly intended to be to "Count II" based on the structure of the agreement, the whole of the text, and the immediately subsequent reference to a Class A felony. And, again, our goal in

the interpretation of an agreement is to give effect to the intent of the parties based on the agreement as a whole. Accordingly, we reject Anderson's argument on this issue.

### Issue Three: Sufficiency of the Evidence

Last, Anderson asserts that the State failed to present sufficient evidence to support the revocation of his probation.[2] A trial court's decision that a violation of probation has occurred is reviewed for an abuse of discretion. *Bennett v. State*, 119 N.E.3d 1057, 1058 (Ind. 2019). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

The State alleged, among other things, that Anderson had violated the conditions of his probation when he committed new offenses. But, according to Anderson, the State failed to prove the date of any such offenses. Therefore, he continues, the State failed to prove that the alleged new offenses occurred "during the probationary period," as necessary to establish those offenses as the grounds for revoking his probation. Ind. Code § 35-38-2-3 (a)(1) (2019).

Anderson's probation officer, Lyn Swanson, testified at the probation revocation hearing. According to Swanson, Anderson reported to probation on November 27, 2012, and his scheduled release date from probation was

---

[2] Insofar as Anderson's argument on this issue is dependent on our agreeing with him on Issue Two, Anderson's argument fails just as his argument on Issue Two fails.

February 5, 2019. A condition of Anderson's probation was that he not commit new offenses. In its second petition to revoke Anderson's probation, the State alleged that he had committed new state-level offenses consisting of two Level 2 drug offenses and one Level 5 drug offense. The State further alleged that Anderson had also committed new federal firearms offenses. Neither the probable cause affidavits nor informations for any of the new offenses are included in the record on appeal.

[19] Swanson testified that, during that probationary period, Anderson was arrested on March 24, 2017, by the Michigan City Police Department on the three alleged drug offenses. However, Swanson did not testify as to when any of those three offenses were alleged to have occurred. Further, there is no limitations period for bringing Level 2 felony charges, and a Level 5 felony charge generally must be brought within five years of the commission of the offense. I.C. § 35-41-4-2. Thus, it is possible that each of those three offenses occurred prior to the commencement of Anderson's probation in November of 2012, while Anderson was on work release.

[20] In the trial court, the State appears to have assumed that evidence of Anderson's date of arrest was equivalent to the dates of the alleged offenses. But the two are not equivalent. Here, the dates of alleged offenses control, and a date of arrest, without more, is not sufficient to show that the new offenses were committed during the probationary period.

Nonetheless, the State admitted into evidence, without objection, certified documents from the United States District Court for the Northern District of Indiana regarding the federal firearms offenses. According to those documents, "while [Anderson was] a county jail detainee on drug charges"—there is no dispute that this is a reference to Anderson's detainment following his March 24, 2017, arrest—officers learned from "a monitored phone call from" Anderson that he had "three firearms, a large capacity magazine . . . , and drugs packaged for sale in a locked lock box" in violation of federal law. Ex. Vol. at 15. Anderson was then transferred to the jurisdiction of the federal court, where he pleaded guilty to federal firearm offenses. The federal court sentenced Anderson for those offenses on August 2, 2018.

Accordingly, the State presented sufficient evidence that Anderson committed the federal firearms offenses during his probationary period. Sometime after March 24, 2017, and prior to August 2, 2018, Anderson possessed and admitted to possessing firearms in violation of federal law. As Anderson's violation of federal law occurred during his probation, we affirm the trial court's revocation of his probation.

Affirmed.

Vaidik, J., and Tavitas, J., concur.